CARROLL, DONALD K., Chief Judge.
The petitioner for a writ of certiorari seeks our reversal and quashal of an order of the Florida Milk Commission denying the petitioner permission to change its classification from that of a milk distributor to that of a producer-distributor.
The petitioner, Florida Dairy, Inc., conducts its business in the Tampa Bay area under the supervision and control of the respondent, Florida Milk Commission, an instrumentality of the State of Florida. The The said corporation is classified as a distributor of milk under the laws of this state. In its operations it produces less than 75 per cent of its milk needs and acquires the remainder from producers in the area, who are respondents in the present proceeding, along with the Commission.
On May 28, 1962, the petitioner notified thirteen producers in writing that it intended to terminate its relationships with them because it desired to become classified as a producer-distributor and as such would produce all of the milk that it would distribute. In the following month the petitioner filed a petition with the Commission to terminate its relationship with its producers. These producers then filed their response to the petition. On July 17th the Commission held a hearing on the said petition and response, receiving testimony from the petitioner arid the producers. The Commission, on August 24, 1962, denied the petitioner’s request to terminate its relationship with its producers, which action we are asked to review by cer-tiorari.
The determination of the issues raised in these certiorari proceedings requires us to consider and construe several provisions in *868 Chapter 501, Florida Statutes, F.S.A., relating to the Florida Milk Commission. In Sections 501.01-501.04 the Legislature, under the state’s police power, created the Commission as an instrumentality of the state, with power to supervise and regulate the entire milk industry of Florida. Section 501.05 provides that the Commission shall adopt and enforce all rules and orders necessary to carry out the provisions of Chapter 501.
The statutory provision directly involved in the present proceedings is Section 501.05, Subsection (3), which reads as follows:
“(3) The relationship between a producer and a distributor, under which milk produced by the producer is regularly delivered to and accepted by the distributor, when once established, shall not be terminated either by the producer or by the distributor without just cause therefor, and the approval of the commission. Just cause will be considered by the commission as any cause deemed just by a prudent and reasonable man.
“Arbitrary, capricious and vindictive reasons will not be considered as just cause for any such termination.”
The critical question is whether the reasons stated by the petitioner for terminating its relationship with its producers constitute “just cause” within the meaning of Section 501.05(3).
The reasons given at the hearing and in the petition filed with the Commission to justify such termination are in substance that the petitioner can produce its milk at a cheaper price than it is presently being required to pay its producers; that classifying the petitioner as a producer-distributor will financially benefit it as well as result in a benefit to the general public; that the petitioner is operating at a financial loss and is unable to meet the competition of producer-distributors in its area; that the petitioner’s determination to seek a change in classification is not the result of any arbitrary, capricious, or vindictive attitude on its part.
On the other hand, the producers assert in their response, which is supported by their evidence at the hearing, that the termination of their relationship with the petitioner would have a crippling, if not a fatal, effect upon their dairies, would force the producers to sell their herds and equipment and get out of dairy farming and they would have to support their families in some other manner; and that they would have to liquidate under very unfavorable circumstances, some producers losing their life savings.
In determining the legality of the Commission’s disapproval of the termination sought by the petitioner, it is appropriate to consider the powers conferred and the responsibilities imposed upon the Commission in Chapter 501, Florida Statutes, F.S.A. Among the legislative findings in Section 501.01 is that the milk industry is “a paramount industry upon which the prosperity of the state and the welfare of its citizens in a large measure depends.” Section 501.04 provides in pertinent part:
“501.04 The Milk Commission is declared to be an instrumentality of the state for the purpose of attaining the ends recited in the legislative findings, and may:
% H* Hí H*
“(9) Make, adopt and enforce all rules, regulations and orders necessary to carry out the purpose of this chapter; ***.
‡ ❖ ‡ * # #
“(11) The operation and effect of any provision of this chapter conferring a general power upon the commission shall not be impaired or qualified by the granting to the commission by this chapter of a specific power or powers.”
In view of the above statutory provisions, we think that the Commission, in determining whether just cause is shown for terminating a relationship between a distributor and its producers, is entitled to and should consider the effect of a such a termination upon the producers, the milk industry *869 as a whole, and the supply of pure and wholesome milk to the inhabitants of the state. The Commission apparently considered such factors in reaching its decision not to approve the termination sought by the petitioner.
The Commission was confronted with the specific question whether the reasons established by the petitioner for terminating its relationship with its producers constituted “just cause” for such termination within the meaning of Section 501.05, Subsection (3), quoted above.
A determination of this question requires an analysis of the provisions of this law. Construing them literally, these provisions declare that the relationship between a producer and a distributor shall not be terminated “without just cause therefor, and the approval of the commission.” Noting that the conjunction “and” is used therein, the logical conclusion is that both conditions must be met: the showing of “just cause” and the securing of the Commission’s approval. However, a fair construction of these provisions seems to be that the Commission, if just cause is shown, could not arbitrarily withhold its approval; but the Commission at least has been endowed with some discretion in determining whether just cause is shown.
The last sentence in Section 501.05(3), concerning arbitrary, capricious, and vindictive reasons, does not seem to us to be applicable here.
The remaining consideration is the definition of just cause in the statute: “Just cause will be considered by the commission as any cause deemed just by a prudent and reasonable man.” The test is not what a reasonable man would do, but whether the cause would be “deemed just” by a prudent and reasonable man.
The adoption of the latter test by the Legislature necessarily carries with it the conferring upon the Commission of some discretion in determining what reasons would be deemed just by a prudent and reasonable man.
In the exercise of such discretion the Commission evidently determined that the reasons given by the petitioner for terminating its relationship with the producers do not amount to just cause. We cannot say that the Commission abused its discretion in so determining, especially in view of its over-all responsibility in regulating the milk industry of the state, so the petition for certiorari before us must be, and it is, denied.
Certiorari denied.
STURGIS and WIGGINTON, JJ., concur.